http://www.va.gov/vetapp16/Files4/1630477.txt

Citation Nr: 1630477 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 11-08 875 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina

THE ISSUES

1. Whether new and material evidence has been received to reopen a claim for muscle aches and swelling, to include as a qualifying chronic disability and as secondary to a lumbar spine disability.

2. Whether new and material evidence has been received to reopen a claim for swollen joints, to include as a qualifying chronic disability.

3. Whether new and material evidence has been received to reopen a claim for service connection for a lumbar spine disorder.

4. Entitlement to service connection for a left arm disorder.

5. Entitlement to service connection for a left hand disorder.

6. Entitlement to service connection for right hand and fingers disorder. 

7. Entitlement to service connection for sinusitis. 

8. Entitlement to service connection for bilateral shoulder disorder.

9. Entitlement to service connection for sleep apnea, to include as secondary to sinusitis.

10. Entitlement to service connection for a cervical spine disorder.

11. Entitlement to a compensable rating for service-connected tension headaches. 

12. Entitlement to a compensable evaluation for service-connected pseudofolliculitis barbae with residual scars.

REPRESENTATION

Veteran represented by: The American Legion

WITNESS AT HEARING ON APPEAL

Veteran

ATTORNEY FOR THE BOARD

N.K., Associate Counsel 

INTRODUCTION

The Veteran had active military service from April 1990 to September 1991, with service in Southwest Asia in January and February 1991. 

This matter comes to the Board of Veterans' Appeals (Board) from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina. 

The Veteran testified before the undersigned Veterans Law Judge in April 2016. A transcript of the hearing is of record. 

This appeal was processed using the Veterans Benefits Management System (VBMS) and the Virtual VA electronic claims file. Virtual VA contains additional VA treatment records and documents that are either duplicative of the evidence in the VBMS electronic claims file or not relevant to the issues on appeal.

The issues of service connection for a cervical spine disorder, lumbar spine disorder, muscle aches and swelling, a left arm disorder, a left hand disorder, right hand/right finger disorders, a bilateral shoulder disorder, sinusitis, sleep apnea and an increased rating for headaches and pseudofolliculitis barbae with residual scars are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. The Veteran's claim for service connection for swollen joints was denied in a June 2009 Board decision; the Veteran did not appeal that decision. 

2. Evidence submitted since the June 2009 Board decision does not include evidence that relates to an unestablished fact necessary to substantiate the claim, is cumulative or redundant of the evidence of record at the time of the prior final denial of service connection for swollen joints, and does not raise a reasonable possibility of substantiating the claim.

3. The Veteran's claim for service connection for a lumbar spine disorder was initially denied in a June 2009 Board decision; the Veteran did not appeal that decision. 

4. Evidence submitted since the June 2009 Board decision regarding the lumbar spine disorder includes evidence that relates to an unestablished fact necessary to substantiate the claim, is not cumulative or redundant of the evidence of record at the time of the prior final denial of service connection, and raises a reasonable possibility of substantiating the claim.

5. The Veteran's claim for service connection for muscle aches and swelling was denied in a June 2009 Board decision; the Veteran did not appeal that decision. 

6. Evidence submitted since the June 2009 Board decision regarding muscle aches and swelling includes evidence that relates to an unestablished fact necessary to substantiate the claim, is not cumulative or redundant of the evidence of record at the time of the prior final denial, and raises a reasonable possibility of substantiating the claim.

CONCLUSIONS OF LAW

1. The June 2009 Board decision that denied service connection for swollen joints is final. 38 U.S.C.A. § 7104 (West 2002); 38 C.F.R. §§ 3.104, 3.156, 20.200, 20.202, 20.302, 20.1105 (2009).
 
2. Since the June 2009 Board decision, new and material evidence has not been received, and the claim of entitlement to service connection for swollen joints is not reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2015). 

3. The June 2009 Board decision that denied service connection for a lumbar spine disorder is final. 38 U.S.C.A. § 7104 (West 2002); 38 C.F.R. §§ 3.104, 3.156, 20.200, 20.202, 20.302, 20.1105 (2009).

4. Since the June 2009 rating decision, new and material evidence has been received, and the claim of entitlement to service connection for a lumbar spine disorder is reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2015). 

5. The June 2009 Board decision that denied service connection for muscle aches and swelling is final. 38 U.S.C.A. § 7104 (West 2002); 38 C.F.R. §§ 3.104, 3.156, 20.200, 20.202, 20.302, 20.1105 (2009).
 
6. Since the June 2009 Board decision, new and material evidence has been received, and the claim of entitlement to service connection for muscle aches and swelling is reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2015). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist 

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). Regarding the claims for muscle aches and the lumbar spine disability, the claims are reopened, thus VA's duties to notify and assist need not be discussed herein. Regarding the claim for joint swelling, the requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met via a letter dated in July 2012 and information in the August 2012 rating decision notification letter. Additionally, the issue was readjudicated in a May 2015 statement of the case. 

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claims. 38 U.S.C.A. § 5103A; 38 C.F.R. 3.159(c), (d). In this case, VA fulfilled its duty to assist the Veteran by obtaining the Veteran's service treatment records, and all relevant, identified, and available post-service treatment records. The Board acknowledges that the Veteran was not provided with a VA examination in conjunction with his claim to reopen his previously denied claim for entitlement to service connection for swollen joints; however, an examination is not warranted as the claim is not reopened herein. See 38 C.F.R. § 3.159(c)(4)(iii). Accordingly, VA is not required to provide the Veteran with a VA examination in conjunction with his claims to reopen entitlement to service connection for such claim.

Additionally, the Veteran testified at a Board hearing. A Veterans Law Judge who conducts a hearing must fulfill two duties to comply with 38 C.F.R. § 3.103(c)(2). Bryant v. Shinseki, 23 Vet. App. 488 (2010). These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the April 2016 Board hearing, the Veteran was assisted at the hearing by an accredited representative. The representative and the Veterans Law Judge asked questions to ascertain new evidence had been submitted to support a service connection claim for swollen joints. No pertinent evidence that might have been overlooked and that might substantiate the claim was identified by the Veteran or the representative. The hearing focused on the elements necessary to substantiate the claims, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claims. Therefore, the Board finds that, consistent with Bryant, the Veterans Law Judge complied with the duties set forth in 38 C.F.R. § 3.103(c)(2). 

Thus, after a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

Merits

Although a decision is final, a claim will be reopened if new and material evidence is presented. 38 U.S.C.A. § 5108. New and material evidence can be neither cumulative, nor redundant, of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. New evidence means existing evidence not previously submitted to VA. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. 38 C.F.R. § 3.156(a). 

In determining whether evidence is new and material, the credibility of the evidence is presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992). The evidence need not relate specifically to the reason why the claim was last denied; rather it need only relate to any unestablished fact necessary to substantiate the claim. Shade v. Shinseki, 24 Vet. App. 110, 118 (2010). Additionally, the phrase "raises a reasonable possibility of substantiating the claim" is meant to create a low threshold that enables, rather than precludes, reopening. Shade, 24 Vet. App. at 117. Reopening is required when the newly submitted evidence, combined with VA assistance and considered with the other evidence of record, raises a reasonable possibility of substantiating the claim. Shade, 24 Vet. App. at 117.

In a June 2009 Board decision, service connection for all three claimed disorders was denied. Muscle aches and swelling was denied because the VA Examiner found the aches and swelling were related to the lumbar muscle spasms, which was unrelated to service. Thus, the aches and swelling was related to a clinical diagnosis and not an undiagnosed illness. The Board denied service connection for swollen joints as no chronic disability was shown, either by the Veteran or by examination. Service connection for a lumbar spine disorder was denied because the VA examiner found that there were no symptoms while the Veteran was on active duty. Accordingly, there was no nexus. 

At the time of the June 2009 Board decision, the record contained the Veteran's service treatment records (STRs), a VA neurological examination on September 2003, and a December 2008 Gulf War examination. There were also private treatment records and lay statements. The STRs were negative regarding each of the claimed disorders. In lay statements, the Veteran reported having muscle aches, joint swelling, and back pain since service. 2000 private records noted complaints of back pain, cervical pain, and upper extremity pain since an accident of July 2000. The examiner noted, however, that this was not the first time he'd had back pain or been treated for back pain. Other private records from that time period note four motor vehicle accidents. The 2008 VA examiner found that the Veteran's muscle aches and swelling were caused by his diagnosed lumbar spasms and that there were no swollen joints. The 2008 VA examiner also found that the lumbar spine disorder was unrelated to service, as there were no in-service symptoms or injuries documented in the claims file. 

Since the last final denial in June 2009, the Veteran testified at a Board Hearing in April 2016. Also added the claims the file were VA treatment records, lay statements, private treatment records, and Social Security Administration records. At the Board hearing, the Veteran noted that he had general swelling of his joints, in addition to muscular aches and pain, and reported a specific back and neck injury he incurred during service. Specifically, the Veteran state that when he was serving in Kuwait one of the tractors broke down and while pulling out the transmission to repair it, he snapped something in his back. See April 2016 Board Hearing Transcript, p.9. He noted that he did not go to sick call while on duty, but that he has experienced back pain continuously since that time. The Veteran also reported in lay statements that he has had muscle aches, joint swelling, and back pain since service. VA treatment records document back pain and muscle pain. 

The Board finds that new and material evidence to reopen the claim for service connection for swollen joints has not been received. Although there is new evidence of record, in that it was not previously submitted to VA, the evidence is not material, as is cumulative of what was already of record. See Bostain v. West, 11 Vet. App. 124 (1998). Specifically, the Veteran reported having joint swelling since service. This evidence was previously of record. Because the evidence submitted since the last final decision regarding the swollen joints is cumulative and/or does not relate to an unestablished fact necessary to substantiate the claim for service connection, the Veteran has not submitted new and material evidence on this matter. 

However, regarding the Veteran's claim to reopen a lumbar spine disorder the Board finds that new and material evidence has been presented. Specifically, the Board notes that the Veteran has provided new information regarding an in-service back injury and back symptoms. This must be presumed credible. Such statement of the Veteran's in-service injury is new as it was not previously submitted to the VA. The evidence is material because it relates to an unestablished fact necessary to establish the claim-evidence of an in service injury which may relate to the Veteran's current lumbar spine disability. See 38 C.F.R. § 3.303(a); Shedden, 381 F.3d at 1167. As the Board has now conceded an in-service injury, this could establish a relationship between the Veteran's lumbar spasms and his service as the negative nexus opinion was based upon a lack of any in-service symptoms. Additionally, the evidence is neither cumulative nor redundant as that evidence was not of record at the time of the prior denial. See 38 C.F.R. § 3.156(a). Moreover, when considering the new evidence in conjunction with the evidence already of record, combined with VA assistance including an examination, it raises a reasonable possibility of substantiating the claim. See Shade, 24 Vet. App. at 117. Accordingly, the Veteran's claim for a lumbar spine disorder is reopened. 

Regarding the claim for service connection for muscle aches and swelling, the Board finds that it is reopened. The Board notes that the Veteran's claim for service connection for muscle aches is affected by the Veteran's statement at his April 2016 Board hearing regarding his in-service injury to his lumbar spine. Pertinently, the Veteran's muscle aches were found to be related to his lumbar spine spasms as noted at his December 2008 VA examination. In particular, the statement is considered new evidence, and material as it raises a reasonable possibility of substantiating the claim for muscle aches on a secondary basis. Accordingly, the Veteran's claim for muscle aches and swelling is reopened. 

ORDER

New and material evidence has not been received and the claim for entitlement to service connection for swollen joints is not reopened.

New and material evidence has been presented, and the claim of entitlement to service connection for a lumbar spine disability is reopened.

New and material evidence has been presented and the claim for entitlement to service connection for muscle aches and swelling is reopened.

REMAND

Regarding the Veteran's increased rating claim for headaches, remand is required for a current examination. See Snuffer v. Gober, 10 Vet. App. 400 (1997) (providing that a veteran is entitled to a new VA examination where there is evidence that the condition has worsened since the last examination). The Veteran last underwent a VA examination for his headaches in November 2013. Since that examination, the Veteran testified at the April 2016 Board hearing that his headaches had increased in severity, to include having headaches on a day to day basis. Thus, a current examination is warranted in order to determine the current severity of his disability. 

Regarding the Veteran's service connection for a cervical spine disorder, remand is required to obtain a VA examination. VA's duty to assist includes providing a medical examination when is necessary to make a decision on a claim. 38 U.S.C.A. § 5103A(d) (West 2014); 38 C.F.R. § 3.159(c)(4) (2015). Such development is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but (1) contains competent evidence of diagnosed disability or symptoms of disability, (2) establishes that the veteran suffered an event, injury or disease in service, or has a presumptive disease during the pertinent presumptive period, and (3) indicates that the claimed disability may be associated with the in-service event, injury, or disease, or with another service-connected disability. 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006) (noting that the third element establishes a low threshold). 

VA treatment records document degenerative changes of the cervical spine via X-ray imaging in February 2015. See Virtual VA Document with Receipt Date of 5/8/15 p. 275. The Veteran testified at his April 2016 Board hearing that he injured his back and his neck/cervical spine in service while he was repairing a tractor in Kuwait. He noted that he did not go to sick call, but experienced pain as a result of the injury since that time. This injury is in accordance with his in-service duties, specifically his MOS as a tractor vehicle repairman, as confirmed in his DD 214. The Veteran reported that he sought medical treatment at the Orthopedic Clinic of Sumter and Tuomey Healthcare system since 2000, which is reflected in the Veteran's December 2000 medical record. Accordingly, as there is a current disability, evidence of an in-service injury and symptoms, and allegations of symptoms since that time, a VA examination and opinion are necessary to determine the etiology of the Veteran's currently diagnosed cervical spine degenerative changes. 

Regarding the Veteran's claim for a lumbar spine disorder, remand is required for an examination. See 38 C.F.R. § 3.159(c)(4); McLendon, 20 Vet. App. at 83-86. However, further development is needed before a decision can be issued on this claim. The record contains evidence of ongoing low back treatment and recurrent back pain. The Veteran has reported ongoing pain of his low back and has sought treatment for his low back pain continuously at the Orthopedic Clinic of Sumter and the Tuomey Healthcare system. The Veteran testified at his April 2016 Board hearing that he injured his back in service while he was repairing a tractor in Kuwait. He noted that he did not go to sick call, but experienced pain as a result of the injury since that time. This injury is in accordance with his in-service duties, specifically his MOS as a tractor vehicle repairman, as confirmed in his DD 214. Accordingly, as there are recurrent symptoms, evidence of an in-service event and symptoms, and evidence of pain since that time, an examination is warranted.

Regarding the claim of service connection for muscle aches and swelling, the Board finds that such is inextricably intertwined with his lumbar spine remand, as if the Veteran is service connected for his lumbar spine this would possibly warrant service connection for his muscle aches. See Harris v. Derwinski, 1 Vet. App. 180, 183(1991) (noting that where a claim is inextricably intertwined with another claim, the claims must be adjudicated together).

With regard to the issues of service connection for the Veteran's left arm, left hand, and right hand and fingers, remand is required for an examination. See 38 C.F.R. 
§ 3.159(c)(4); McLendon, 20 Vet. App. at 83-86. At the April 2016 Board hearing, the Veteran testified that his service generally caused such disabilities, specifically noting how his service duties required roughly using his hands and upper extremities frequently. See Board Hearing Testimony pp. 17-19. This is consistent with the Veteran's MOS of a tractor vehicle repairman. VA treatment records dated in October 2011, indicate the Veteran was treated for his elbows, fingers, hands and shoulders. He was taking Tramadol. VA treatment records in 2013 document a diagnosis of carpal tunnel syndrome in the left hand revealed through EMG. The Veteran reported pain and numbness in both hands at night which continues into morning. Treatment records further indicate that the Veteran had difficulty raising his right arm, as he had sharp pain radiating to his neck. In a May 2012 VA examination report, the examiner opined that the Veteran's left arm pain with radiculopathy was as likely as not secondary to degenerative disc disease of the cervical spine. Therefore, as the Veteran's cervical spine disability is being remanded for further development, the Veteran's left arm disability is also intertwined with such remand. Furthermore, there is a current left hand disability, recurrent symptoms of the right fingers and hand, in-service duties that would strain these joints, and the Veteran's reports of pain since that time, an examination is warranted.

Regarding the Veteran's sinusitis, remand is required for an examination. See 38 C.F.R. § 3.159(c)(4); McLendon, 20 Vet. App. at 83-86. The Veteran testified at his April 2016 Board hearing that he served in Kuwait and was exposed to various environmental hazards which affected his sinuses and breathing. Service personnel records, including the Veteran's DD 214, verify that he served in Kuwait. VA medical records show treatment for sinus problems in 2014 at the Columbia VAMC and a current diagnosis of sinusitis in February 2016. Based on the foregoing evidence, the Board finds that adequate VA examinations and etiology opinions are required.

Regarding the Veteran's claim for service connection for sleep apnea, remand is required for an examination. See 38 C.F.R. § 3.159(c)(4); McLendon, 20 Vet. App. at 83-86. A May 2014 VA treatment record indicates a current diagnosis of sleep apnea. See VBMS CAPRI Record with Receipt Date of 5/16/16 p. 215. The Veteran contended at his April 2016 Board hearing that such was secondary to his snoring and/or his sinus problems. The Board finds that as it is remanding the claim for service connection for sinusitis for a VA examination to determine whether such is due to the Veteran's service, the issue of service connection for sleep apnea is inexplicably intertwined with the remand for sinusitis, as the Veteran has claimed his sleep apnea as secondary to such. 

Regarding the Veteran's claims for service connection for bilateral shoulder disorder, remand is required for an examination. See 38 C.F.R. § 3.159(c)(4); McLendon, 20 Vet. App. at 83-86. The Veteran reported at the April 2016 Board Hearing that his pain was due to being a mechanic in service generally. With regard to his right shoulder, the Veteran noted specifically that no event in particular caused his shoulder pain, but rather that he had pain generally after his in-service duties. Degenerative changes of the shoulder were noted in June 2013. Regarding the Veteran's left shoulder, the Board notes that in March 2010 at the Columbia VAMC imaging revealed degenerative changes. Therefore, there are current disabilities, evidence of in-service symptoms, and evidence of symptoms since that time, and an examination is warranted. 

Regarding an increased rating for pseudofolliculitis barbae with residual scars, the Board notes that the Veteran has requested a hearing before a traveling Veterans Law Judge in his April 2016 VA Form 9. The requested hearing has not yet been scheduled. 

Accordingly, the case is REMANDED for the following action:

1. Regarding the Veteran's claim of an increased rating for pseudofolliculitis barbae with residual scars, schedule the Veteran for a Board hearing at the RO. 

2. Contact the appropriate VA Medical Center and obtain and associate with the claims file all outstanding records of treatment from 2015 and 2016. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his or her representative. 

3. Contact the Veteran and afford him the opportunity to identify by name, address and dates of treatment or examination any relevant medical records. Subsequently, and after securing the proper authorizations where necessary, make arrangements to obtain all the records of treatment or examination from all the sources listed by the Veteran which are not already on file. All information obtained must be made part of the file. All attempts to secure this evidence must be documented in the claims file, and if, after making reasonable efforts to obtain named records, they are not able to be secured, provide the required notice and opportunity to respond to the Veteran and his representative.

4. After any additional records are associated with the claims file, provide the Veteran with an appropriate examination to determine the severity of the service-connected migraine headaches. The entire claims file should be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. The examiner should report all signs and symptoms necessary for rating the Veteran's service connected migraines under the rating criteria, utilizing the appropriate Disability Benefits Questionnaire. This VA examination should further include a statement of the effect of the Veteran's migraines on his occupational functioning and daily activities.

5. After any additional records are associated with the claims file, schedule the Veteran for a VA examination to determine the etiology of his cervical spine disorder. The entire claims file should be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 

Based on the review and the examination, the examiner must opine as to whether it is at least as likely as not (a probability of 50 percent or greater) that the Veteran's current cervical spine disorder is related to his active service. The examiner must address the following: 1) the STRs; 2) the Veteran's credible reports of in-service injury; 3) private treatment records noting multiple motor vehicle accidents; and 4) VA treatment records. 

6. After any additional records are associated with the claims file, schedule the Veteran for a VA examination to determine the nature and etiology of his lumbar spine disorder. The entire claims file should be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 

Based on the review and the examination, the examiner must opine as to whether it is at least as likely as not (a probability of 50 percent or greater) that each current lumbar spine disorder, if any, is related to his active service. The examiner must address the following: 1) the STRs; 2) the Veteran's credible reports of in-service injury; 3) private treatment records noting multiple motor vehicle accidents; and 4) VA treatment records. 

7. After any additional records are associated with the claims file, schedule the Veteran for a VA examination to determine the nature and etiology of his left hand, right hand and right fingers disabilities. The entire claims file should be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 

Based on the review and the examination, the examiner must provide an opinion regarding whether there are current diagnosed disorders of the right hand, left hand, or right fingers.

If so, the examiner must opine as to whether it is at least as likely as not (a probability of 50 percent or greater) that each current lumbar spine disorder, if any, is related to his active service. The examiner must address the following: 1) the STRs; 2) the Veteran's credible reports of in-service injury; and 3) VA treatment records. 

8. After any additional records are associated with the claims file, schedule the Veteran for a VA examination to determine the nature and etiology of his currently diagnosed sinusitis. The claims folder must be reviewed in conjunction with the examination. All testing deemed necessary must be conducted and results reported in detail. 

Based on the review and the examination, the examiner is asked to render an opinion as to whether it is at least as likely as not (a probability of 50 percent or greater) that the Veteran's current sinusitis is related to his active service, to include his credible reports of exposures in Kuwait.

9. After any additional records are associated with the claims file, schedule the Veteran for a VA examination to determine the nature and etiology of his currently diagnosed sleep apnea. The claims folder must be reviewed in conjunction with the examination. All testing deemed necessary must be conducted and results reported in detail. 

Based on the review and the examination, the examiner is asked to render an opinion as to whether it is at least as likely as not (a probability of 50 percent or greater) that the Veteran's current sleep apnea is related to his active service, to include his credible reports of exposures in Kuwait.

The examiner must also opine whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran's sleep apnea was caused or aggravated by the sinusitis.

10. After any additional records are associated with the claims file, schedule the Veteran for a VA examination to determine the etiology of his bilateral shoulder disorder. The entire claims file should be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 

Based on the review and the examination, the examiner must opine as to whether it is at least as likely as not (a probability of 50 percent or greater) that each currently diagnosed shoulder disorder is related to his active service. The examiner must address the following: 1) the STRs; 2) the Veteran's credible reports of in-service injury; 3) private treatment records noting multiple motor vehicle accidents; and 4) VA treatment records. 

11. Notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claims, and that the consequences for failure to report for a VA examination without good cause may include denial of the claims. 38 C.F.R. §§ 3.158, 3.655 (2015). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

12. Review the examination report to ensure that it is in complete compliance with the directives of this remand. If the report is deficient in any manner, the AOJ must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

13. After completing the above action, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claims must be readjudicated. If the claims remain denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs